FILED

2013 Jan-24  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SEBON HUNDLEY, JR.,

    PLAINTIFF,

vs.                                  CASE NO. CV 12-J-920-S

GREEN TREE SERVICING, LLC,

    DEFENDANT.

## <u>MEMORANDUM OPINION</u>

Pending before the court is defendant Green Tree Servicing, LLC's motion for summary judgment, evidentiary submissions (doc. 19), and brief in support of said motion (doc. 20).[1]  Having considered the motion, evidence and brief, as well as all other pleadings filed to date, the court finds as follows:

## FACTUAL BACKGROUND

In January 2011 the defendant purchased the servicing rights and Promissory Note securing plaintiff's mortgage from Litton Loan Servicing, L.P.  Defendant ex. 17 to plaintiff depo.  According to plaintiff, he thinks he may have been behind on his mortgage payments when the servicing rights were acquired by Green Tree Servicing, LLC ("Green Tree"), and that he needed to pay about ten thousand dollars

---

[1]The defendant's motion for summary judgment and supporting documentation was filed December 21, 2012.  Pursuant to Exhibit A to the Scheduling Order entered by the court on June 20, 2012, the plaintiff had fourteen (14) days to respond to such a motion.  *See* doc. 16, Exhibit A.  As of today's date, the court has neither received a response to said motion, nor any other pleading from the plaintiff.

to make it current.[2]  Plaintiff depo. at 54 (submitted as ex. B to defendant motion for summary judgment).  He was given a dollar amount needed to bring his mortgage current, and paid that amount.[3]  *Id*. at 61-62, 79-80.  *See also* Exhibit D to Affidavit of David Peters, Assistant Vice President-Foreclosure and Bankruptcy for defendant.

At the time Green Tree became the servicer of the mortgage, there was no insurance on the property.  Affidavit of  Peters, at ¶ 5, exhibit E to Peters affidavit; plaintiff depo. at 80.  Green Tree notified plaintiff of this in January 2011.  Affidavit of Peters, ¶ 5.  The plaintiff agrees that his ALFA policy lapsed during the time he was behind on mortgage payments.  Plaintiff depo. at 80, 122.  According to plaintiff, ALFA refused to re-issue his policy after he got behind in his payments, prior to Green Tree's purchase of the loan.  Plaintiff depo. at 62, 78-79.  Plaintiff agrees that the lender had the right to place insurance on the property.  *Id*. at 122, 126.

In March 2011, Green Tree informed plaintiff that it had purchased insurance for $1,703.70.  Affidavit of Peters,  ¶ 6; exhibits F and G to Peters affidavit.  That same month, Green Tree sent plaintiff a letter informing him that he also owed $2,103.21, in costs and expenses incurred by the prior servicer in 2009 and 2010.  *See*

---

[2]In deposition, the plaintiff agreed he had no records of mortgage payments for May through October, 2010.  He does not know why, other than his wife may have paid them from a separate account, but he does not know if she has any separate account.  Plaintiff depo. at 60-61.

[3]Plaintiff admits he received default notices from the prior mortgagee in both 2009 and 2010.  Plaintiff depo. at 109-110.  He never looked at his promissory note or mortgage to see if he had any liability for the legal costs of default or foreclosure proceedings.  *Id*. at 111-112.

ex. H to Peters affidavit. These costs were split over 85 months, causing a $24.74 increase in the monthly amount due on the mortgage payment. Affidavit of Peters, ¶ 7. Also in March 2011, defendant sent an annual escrow disclosure statement, informing the plaintiff that his monthly payment would increase, due to non-escrow items such as the lender placed insurance and the monthly charge for amounts past due. *Id.*, ¶ 8; exhibit I to Peters affidavit. *See also* Peters affidavit, ¶ 10.

In June 2011 Green Tree received notice that the plaintiff had purchased homeowner's coverage and therefore cancelled the lender placed insurance. Affidavit of Peters, ¶ 10; exhibit N to Peters affidavit. However, $300.93 in an earned premium remained owing on that policy, and was included on the plaintiff's August 2011 billing statement. *Id.*, ¶ 11. The plaintiff alleges he arranged for insurance in February 2011 but Green Tree never paid the insurer and the property went uninsured until October 2011 when defendant again placed insurance on it. Plaintiff depo. at 88-89, 99-101. The plaintiff believed this caused his monthly payment amount to increase from $970.00 to $1,300.00. *Id.* at 65, 166-168. He does not know if the amount in escrow would have been sufficient at that time to pay the insurance premium due for the policy. *Id.* at 107-108.

The August billing statement reflects that the plaintiff was multiple payments behind on principal, escrow and insurance, and also had an escrow balance of $–1,236.95. Exhibit O to Peters affidavit. The September 2011 statement shows that

the plaintiff was only one month behind in his principal payment, and had reduced the escrow balance to $–779.53. Exhibit P to Peters affidavit. In October 2011 the defendant notified the plaintiff that he was in default, that $2,248.55 was needed to make his mortgage current, and that said sum had to be paid within 30 days. Affidavit of Peters, ¶ 13; ex. Q to Peters affidavit; plaintiff depo. at 117-118; defendant ex. 13 to plaintiff depo. The plaintiff did not make his mortgage payment in October 2011 because he "refused to pay an absorbent (sic) amount of money." Plaintiff depo. at 65, 118.

According to the plaintiff, he was already paying the mortgage company to pay his insurance, and the insurance was not getting paid. *Id.* at 65-66, 68, 168-169. Therefore, he did not make the October 2011 payment, *id.* at 69, because he would have been paying for the insurance twice. *Id*. at 101. The plaintiff told Green Tree that he would pay the amount set forth in the loan documents from when he purchased the house, and nothing more. *Id*. at 70, 75-77, 169. *See also* defendant ex. 33 to plaintiff depo. That amount was his principal, interest, PMI and escrow, which included homeowner's insurance and property taxes. *Id.* at 71. He never asked Green Tree to refinance his loan. *Id.* at 180-181. He never read the mortgage. *Id.* at 225-226. Green Tree did receive two payments from plaintiff in November 2011 totaling $1,960.00. Peters affidavit, ¶ 18. Because this amount was insufficient to cure the default, defendant declined to accept those funds and returned them to plaintiff. *Id.*

4

*See also* exhibit U to Peters affidavit.

In his amended complaint, the plaintiff asserts he requested the defendant provide him with an accounting of his escrow account. Amended complaint, ¶ 1. According to the plaintiff, because he did not receive the accounting, he had no obligation to pay the increased amounts, which led to his home being foreclosed. *Id*. The plaintiff also complains that he never received documents from defendant showing that defendant had the "assigned power to foreclose on the property." Amended complaint, ¶ 2.  According to the plaintiff, the lawful holder of his mortgage is First Liberty Financial Group, and not defendant. *Id*.

Defendant responds that it received assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS"), on November 30, 2011, so defendant could begin foreclosure proceedings.  Affidavit of Peters, ¶ 20.  The plaintiff's property was foreclosed on January 12, 2012. *Id., ¶ 24.

No "counts" appear in either his complaint or amended complaint, in contravention of Rule 10(b), Fed.R.Civ.P.. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.2001).  However, in his first complaint the plaintiffs seems to be stating claims for wrongful foreclosure, fraud, emotional distress, and a claim for no "accounting and proof of insurance as required by law and the contract."[4] Complaint,

---

[4]The court cannot discern whether the plaintiff also attempts to state a claim for conversion.  The complaint states that the defendant "has converted the funds paid by the Plaintiff to the Defendant that were supposed to be paid into escrow to pay the Plaintiff

¶¶ 8-11; amended complaint, ¶¶ 4-5.

## SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

---

Homeowners Insurance."  Complaint, ¶ 12.

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## LEGAL ANALYSIS

Viewing all of the evidence in the light most favorable to the plaintiff, the court

finds glaringly obvious the fact that the plaintiff missed payments on his mortgage payment.  This caused the prior mortgage servicer to begin foreclosure proceedings, which caused his insurance company to refuse to renew his policy, allowing his insurance to lapse.  The mortgage servicer therefore obtained lender placed insurance, and attached the premiums to plaintiff's monthly payment, causing the same to increase.  The plaintiff then missed additional monthly payments, causing defendant to against initiate foreclosure proceedings.

*A.  Wrongful Foreclosure/Breach of Contract/Breach of Fiduciary Duties*

The plaintiff alleges that

The Defendant has never given documents to the Plaintiff showing that they had the assigned power to foreclose on the property.  The documents entered into evidence by the Defendant's (sic) prove there was no proper assignment of the note nor the Mortgage.  On the note there are stamps with no dates nor signatures attempting to show assignment.  On the Mortgage which gives the right to foreclose, there are no assignments at all and the lawful holder of the mortgage is First Liberty Financial Center.

The foreclosure was unlawful as on the day it shows it was done under the authority of Mortgage Electronic Registration System, Inc. acting as the nominee of First Liberty Financial Group.  Nowhere on the Mortgage is there an assignment from First Liberty to anyone much less Mortgage Electronics.  On the note, there is an alleged transfer from Liberty to Sun Trust and from Sun Trust to Defendant Green Tree.  Thus, if the note is correct Liberty even if it had transferred the mortgage to Mortgage Electronics had no right or interest to transfer.

The Defendant unlawfully under it's (sic) alleged Mortgage foreclosed on the property when the Plaintiff was compliant with the agreement and not in default.  Thus there was a breach of the contract and a foreclosure

that was against the laws of the State of Alabama.

Amended complaint, ¶¶ 2, 4, 5.

The Mortgage signed by the plaintiff includes the following language:

(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS in the mortgagee under this Security Instrument.
....

... Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property ....

... MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property...
...

20.  Sale of Note: Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note....

Mortgage, submitted as Exhibit D to complaint.

Hence, the plaintiff is simply mistaken that "the holder of the mortgage is First Liberty Financial Group."  Amended complaint, ¶ 2.  The Mortgage states that the mortgagee is MERS.  Similarly, there did not need to be "an assignment from Liberty

9

to anyone much less Mortgage Electronics" (amended complaint, ¶ 4) because MERS held the mortgage until November 2011, when it transferred its interest to Green Tree.[5]

The defendant has supplied evidence demonstrating that the plaintiff was notified when the servicing rights were transferred from Litton Loan Servicing to Green Tree in January 2011. Exhibit A to Peters affidavit. The Note, which is a negotiable instrument under Alabama law, shows on its face that it was transferred from First Liberty Financial Group, LLC, to Sun Trust Mortgage, Inc., and from Sun Trust Mortgage to Green Tree Servicing LLC. Exhibit B to Peters affidavit. *See* § 7-3-104(a), Alabama Code 1975, as amended (defining a promissory note as a negotiable instrument). Upon Green Tree's purchase of the Note, it became the "Lender." *See e.g., Connell v. CitiMortgage, Inc*., 2012 WL 5511087 *2 n.5 (S.D.Ala.2012). Green Tree also became the mortgagee when MERS assigned the mortgage to it on November 30, 2011. Exhibit V to Peters affidavit. As holder of the Note and the Mortgage, and under the clear terms of the Mortgage, Green Tree had the power to foreclose on the property. *See e.g., Perry v. Federal Nat. Mortg. Ass'n*, 100 So.3d 1090, 1095 (Ala.Civ.App.2012) (citing Ala.Code § 35-10-12).

Although the plaintiff asserts in his amended complaint that he was compliant

---

[5]Although MERS was the holder of the Mortgage, it never owned the Note and never had a right to payment on the Note.

with the terms of the agreement and not in default, the court has no evidence in support of this allegation before it.  Rather, the evidence reflects, and the plaintiff admits by deposition, that he was and had been behind in his mortgage payments.

B.  *Failure to Provide Accounting/Breach of Fiduciary Duty/Breach of Contract*

The plaintiff asserts that despite multiple requests for a payment history (which he calls an accounting) he did not receive the same.  Complaint, ¶¶ 4, 6; amended complaint, ¶ 1.  The defendant submitted evidence reflecting that the plaintiff was sent a print out of his payment history with Green Tree on October 5, 2011.  Exhibit R to Peters affidavit.  He was also sent an annual accounting of escrow funds in March 2011, as required by RESPA, 12 U.S.C. § 2609(c)(2)(B).[6]  *See* affidavit of Peters, ¶ 8.

The amended complaint alleges that the plaintiff requested an accounting in May 2011.  Amended complaint, ¶ 1.  The court has no evidence of any such request being made by the plaintiff.  The plaintiff attached to his complaint a letter from his lawyer, dated October 27, 2011, which contains a request for information related to

_____

[6]In its memorandum in support of defendant's motion for summary judgment (doc. 20), the defendant delves into the elements of a claim under 12 U.S.C. § 2605(e), just in case the plaintiff brought such a claim in the complaint or amended complaint.  Because the court finds no allegation in either of the complaints which could stretch far enough to cover such a claim, the court declines to engage in such an analysis.  See *Maniccia v. Brown ,*171 F.3d 1364, 1367 (11th Cir.1999) (*citing Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir.1961) (noting even with the liberal construction accorded a pleading, the court is not required to fabricate a claim that a plaintiff has not spelled out in his pleadings).

the escrow account.  Doc. 1-1 at 36.  Another letter from his lawyer, dated November 28, 2011, references not having received "information requested on 10/27/2011."  *See* doc. 1-1 at 24.  A further letter of December 21, 2011, against asks for "the information you promised."  Doc. 1-1 at 38.  The court has no evidence which reflects whether or not this information was provided to the plaintiff.  However, the court does have evidence before it demonstrating that the plaintiff was provided a payment history in October 2011 (exhibit R to Peters affidavit) and a complete payment history, through September 2011.  *See* doc. 1-1 at 15-23.  The plaintiff provides no evidence, argument, or suggestion that such a document, attached to his complaint, was not the "accounting" he sought.

Although the plaintiff makes vague references to the defendant "breach[ing] its duties under the contract and Alabama law," (amended complaint, ¶ 1), the court has no evidence before it of any breach of a contract by the defendant.  If the plaintiff is claiming breach of fiduciary duties, the court similarly has no evidence of any such breach, or that any such duties existed.  Under Alabama law, no fiduciary relationship exists between a mortgagee and mortgagor.  *See. e.g., K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So.2d 671, 675 (Ala.1992)("Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank."); *Brabham v. Am. Nat'l Bank of Union Springs*, 689 So.2d 82 (Ala.Civ.App.1996)(applying general rule to the relationship

12

between a mortgagee and mortgagor). *See also In re Sharpe*, 391 B.R. 117 (Bkrtcy.B.D.Al.2008).

## C. *Fraud/Emotional Distress/Conversion*

In his original complaint, the plaintiff states generally that he was defrauded by defendant's actions, he suffered emotional distress, and that the defendant converted funds paid by the plaintiff that were supposed to be paid into escrow. Complaint, ¶¶ 8-9, 12. These allegations fail to state claims upon which relief may be granted. They are no more than "[t]hreadbare recitals of the elements of a cause of action" and "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Even given the most liberal construction, the court finds no viable claim for fraud was ever brought,[7] no cause of action for emotional distress under this fact situation exists

---

[7]In its entirety, the plaintiff's allegation of fraud states "The plaintiff has been defrauded by the actions of the Defendant." Complaint, ¶ 9. As the Southern District of Alabama has recently observed:

> "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Ala. R. Civ. P. 9(b). This rule "commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of." *DGB, LLC v. Hinds*, 55 So.3d 218, 230 (Ala.2010) (internal quotes omitted). Rather, "[t]he pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Id*. (internal quotes omitted). A fraud claim that fails to satisfy Rule 9(b) is "properly dismissed for failure to state a claim upon which relief could be granted." *Anderson v. Clark*, 775 So.2d 749, 752 (Ala.1999); accord *Bethel v. Thorn*, 757 So.2d 1154, 1161 (Ala.1997).

*RC Lodge, LLC v. SE Property Holdings, LLC* , 2012 WL 2898815, *2 (S.D.Ala.2012).

under Alabama law,[8] and the plaintiff did no more than allege conversion.[9]  The court certainly has no evidence of the same.

## CONCLUSION

Having considered the foregoing, and being of the opinion that no genuine issues of material fact exist and the defendant is entitled to judgment in its favor as a matter of law, the court shall grant the defendant's motion for summary judgment (doc. 19) by separate Order.

**DONE** and **ORDERED** this the 24th day of January, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE

---

[8]The Alabama Supreme Court has only allowed intentional inflection of emotional distress claims in cases involving (1) family burials; (2) insurance settlements; and (3) egregious sexual harassment.  *See e.g., Blow v. Virginia College*, 2012 WL 6685683, *3  (N.D.Ala.2012) (citing *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041 (Ala.1993).

[9]At a minimum, a  claim for conversion requires identification of specific monies wrongfully taken.  *See Southland Health Services, Inc. v. Bank of Vernon*, – F.Supp.2d —, 2012 WL 3507854, *24-25 (N.D.Ala.2012); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303-1304 (2010) (listing cases holding that "[t]he Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification").